IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE MEDICAL TEAM, INC.                    *
1850 Centennial Park Drive
Suite 600                                 *
Reston, Virginia 22091-1517
                                          *

       Plaintiff

                                          *

   v.                                     *        Case No.

                                          *

MIKE LEAVITT,
Secretary of Health and Human Services    *
Serve on:
                                          *

       Secretary to the General Counsel
       Office of General Counsel               *
       Department of Health and Human
       Services                                *
       200 Independence Avenue, S.W.
       Washington, D.C.  20201                 *

       Alberto Gonzales, Attorney General      *
       950 Pennsylvania Avenue
       Washington, D.C.  20530-0001            *

       United States Attorney for the          *
       District of Columbia
       555 4th St. NW                          *
       Washington, D.C.  20001
       Attention: Civil Division.              *

       Defendant                               *

  *    *    *    *    *    *    *    *    *    *    *    *

**COMPLAINT**

1

Plaintiff The Medical Team, Inc. ("Medical Team"), by undersigned counsel, bring this Complaint against Mike Leavitt, Secretary of Health and Human Services ("Leavitt"), and for reasons therefor, states as follows:

### The Parties

1.     Plaintiff Medical Team is a home health agency ("HHA") organized under the laws of the State of Virginia which at relevant times provided health services such as skilled nursing, health assistance, physical therapy and speech therapy, in a home setting, at locations in New Orleans, Baton Rouge and Lafayette, Louisiana, San Antonio, Texas, Southfield, Michigan, and Reston, Virginia.  During the relevant Fiscal Year it had its home office at Reston, Virginia. Many of Medical Team's clients receiving the referenced services were covered by the federal Medicare program, 42 U.S.C. §§ 1395 *et seq.*, and as a consequence, Medical Team became eligible for reimbursement under the Medicare program.

2.     Leavitt is the government official whose subordinate official, Mark D. McClellan, M.D., Ph.D., is the Administrator ("the Administrator") of the Center for Medicare and Medicaid Services ("CMS"), which administers reimbursement under Medicare.  CMS is the successor of the Health Care Financing Administration ("HCFA").  Many of the actions alleged in this Complaint occurred while HCFA was responsible for the proceedings.  For purposes of this Complaint, no distinction will be made between HCFA and its successor CMS, and for simplicity all references hereinbelow will be to CMS.  Leavitt is sued in his official capacity only, for actions of the Administrator and CMS, for whose actions he is legally designated to answer.

2

***Jurisdiction and Venue***

3.      This case is an appeal for judicial review of the action of the Administrator in reversing a decision of the Provider Reimbursement Review Board.  Such judicial review is authorized under 42 U.S.C. § 1395oo(f).  To the extent not authorized by that statute, judicial review is authorized under the Administrative Procedure Act, 5 U.S.C. § 704, and in any event 42 U.S.C. § 1395oo(f) explicitly contemplates that appeals brought thereunder shall be tried "pursuant to the applicable provisions under chapter 7 of title 5, United States Code..."  This action is filed fewer than 60 days after April 28, 2006, which was the date of receipt of the Administrator's decision.  Hence this appeal is timely filed, and this Court has subject-matter jurisdiction.

4.      This court has personal jurisdiction over Leavitt by virtue of the fact that he is an official whose office is situated in this District.  By virtue of its action in filing this appeal in this District, Plaintiff has submitted itself to the personal jurisdiction of this court.

5.      Venue is properly laid in this District by virtue of 42 U.S.C. § 1395oo(f), which authorizes venue in this court irrespective of other factors which might otherwise affect venue.

***Statutory and Regulatory Background***

6.      Medicare is a national health insurance program.  Part A of the Medicare Program, the Part applicable to this case, codified at 42 U.S.C. § 1395c *et seq.* of the Social Security Act ("SSA"), provides the elderly and the disabled with "basic protection against the costs of hospital, related post-hospital, home health services, and hospice care...."  42 U.S.C. § 1395c.  Health care providers such as HHAs participating in the Medicare Program generally cannot collect payment for these health services from the Medicare beneficiaries themselves, but

3

must instead obtain reimbursement from CMS in the manner set forth in the Medicare Program.

CMS contracts with private insurance companies called "Intermediaries" to process the claims

and audit the cost reports submitted by providers.

      7.     For all relevant "cost reporting periods," as that term will be defined below, the

Medicare Program has reimbursed home health agencies such as Plaintiff for the "reasonable

cost" of covered services, which was defined as the "cost actually incurred" exclusive of costs

"found to be unnecessary in the efficient delivery of needed health services."  42 U.S.C.

§ 1395x(v).  These costs include the cost to providers like Medical Team of providing skilled

physical therapy services to clients.

      8.     In all relevant cost periods, by statute, Congress has provided that physical therapy

services be reimbursed differently when the physical therapist is a contractor from the way those

services are reimbursed when the physical therapist is an employee.  Congress provided that:

> Where physical therapy services ... are furnished under an arrangement with a
> provider of services ... the amount included in any payment to such provider or
> other organization under this subchapter as the reasonable cost of such services
> (as furnished under such arrangements) shall not exceed an amount equal to the
> salary which would reasonably have been paid for such services (together with
> any additional costs that would have been incurred by the provider or other
> organization) to the person performing them if they had been performed in an
> employment relationship with such provider ... plus the cost of such other
> expenses (including a reasonable allowance for travel time and other reasonable
> types of expense related to any differences in acceptable methods of organization
> for the provision of such therapy) incurred by such person, as the Secretary may in
> regulations determine to be appropriate.

42 U.S.C. § 1395x(v)(5)(A).  In other words, a physical therapist who operates as an outside

contractor of a provider cannot ordinarily be compensated at a rate greater than would be

received by an employee of the provider.

9.     At all relevant times, CMS has interpreted the above statutory language, i.e. the language delineating the "reasonable cost" of physical therapy services provided by a provider's outside contractor, in 42 CFR § 413.06, as ordinarily being "an amount equivalent to the prevailing salary and additional costs that would reasonably have been incurred by the provider or other organization had such services been performed by such person in an employment relationship."  In other words, CMS has interpreted an outside contractor's "reasonable cost" as being *pro tanto* equivalent to the salary of a *salaried* provider employee.

10.     The referenced regulation goes on to establish what a "prevailing salary" for physical therapists is, namely "the hourly salary rate based on the 75th percentile of salary ranges paid by providers in the geographical area, by type of therapy, to therapists working full time in an employment relationship."  This is clearly the maximum rate at which CMS has ordinarily intended to reimburse providers for the services of outside contractor physical therapists.  To that end, the regulation provides:

> Guidelines are the amounts published by CMS reflecting the application of paragraphs (b) (1) through (4) of this section to an individual therapy service and a geographical area. Other statistically valid data may be used to establish guidelines for a geographical area, provided that the study designs, questionnaires and instructions, as well as the resultant survey data for determining the guidelines are submitted to and approved in advance by CMS. Such data must be arrayed so as to permit the determination of the 75th percentile of the range of salaries paid to full-time employee therapists.

42 CFR § 413.106(b)(6).  The regulation not only defines guidelines but establishes CMS' intent to promulgate them:

> Prior to the beginning of a period to which a guideline will be applied, a notice will be published in the Federal Register establishing the guideline amounts to be applied to each geographical area by type of therapy.

5

42 CFR § 413.106(d).  These guidelines were in effect at all relevant times.

11.    CMS publishes, without employing Administrative Procedure Act notice and comment procedures, a Provider Reimbursement Manual ("PRM").  Since 1977, the PRM has had a section 1403 captioned "Reasonable Cost of Therapy and Other Services Furnished By Outside Suppliers."  Given the caption, it would appear that in this section CMS has been addressing only the compensation of outside suppliers, i.e. non-employees.  In part this section has read:

> The guidelines apply only to the costs of services performed by outside suppliers, not the salaries of provider's employees.  However, the costs of the services of a salaried employee who was formerly an outside supplier of therapy or other services, or any new salaried employment relationship, will be closely scrutinized to determine if an employment situation is being used to circumvent the guidelines.  Any costs in excess of an amount based on the going rate for salaried employee therapists must be fully justified.

While CMS acknowledges in the above text that its guidelines apply only to services provided by outside contractors (as they must, since the underlying statute the guidelines implement only addresses the services of outside contractors), CMS intends to apply the guidelines to employee salaries where salaries are being paid to former outside contractors "to circumvent the guidelines."

12.    The just-quoted language is directly followed by a separate paragraph.  This paragraph reads:

> In situations where compensation, at least in part, is based on a fee-for-services or a percentage of income (or commissions), these arrangements will be considered subject to the guidelines in this chapter.

If under this paragraph, as the Administrator now claims, the guidelines apply to reimbursement of the costs of employee physical therapist services where the employees are compensated on a

6

per-visit basis, the paragraph contradicts both the caption of the section of the PRM in which it appears and the preceding paragraph.

13.    Despite the clear specification in the statute that the limits only apply to reimbursement of services provided "under arrangement," the Administrator and his predecessors frequently took the position that the guidelines should apply to reimbursement of per-visit-compensated physical therapist employees just as it did to reimbursement of the cost of outside contractor physical therapists.  And in case rulings the Administrator has pointed to the PRM language as proof of a consistent position that the guidelines did apply to reimbursement of the costs of per-visit-compensated physical therapist employees.

14.    In 1998, effective April 1, 1998, *a date after the cost periods involved in this case*, 42 CFR § 413.106(c)(5) was amended (by 63 FR 5106-01) to provide:

> If therapy services are performed in situations where compensation to a therapist employed by the provider is based, at least in part, on a fee-for-service or on a percentage of income (or commission), the guidelines will apply. The entire compensation will be subject to the guidelines in cases where the nature of the arrangements is most like an under "arrangement" situation, although technically the provider may treat the therapists as employees. The intent of this section is to prevent an employment relationship from being used to circumvent the guidelines.

At this point, therefore, CMS officially and unambiguously asserted a right to limit reimbursement of the compensation of all employee physical therapists as if they were hourly employees, even if they were not.  There is no authority for this action in statute, and the validity of the regulation is highly questionable.  However, for present purposes, all that matters is that this regulation was not in force at any relevant time.

15.    Before this date *and at all relevant times* the comparable passage of the regulation had not attempted to prescribe the reimbursement of compensation of employee physical therapists compensated on a per-visit basis

### Facts

16.    Plaintiff Medical Team at all relevant times has been a provider of home health services within the meaning of the Medicare program.  Like all such providers, it is required to file annual "cost reports."  Medical Team's cost reporting periods end March 31 of each year.

17.    For the cost reporting periods of Fiscal Years Ending 1996 and 1997, certain physical therapists were employed directly by Medical Team, which paid their taxes and treated them in all respects as employees.  These therapists were compensated on a per-visit basis. Medical Team sought reimbursement for 100 per cent of their compensation, which exceeded the CMS-published guideline costs applicable to outside contractors during this period.

18.    As noted in ¶ 6 above, providers like Medical Team are required to submit their claims to so-called Intermediaries.  Medical Team's Intermediary for the relevant cost reporting periods was Blue Cross and Blue Shield Association / Cahaba Government Benefit Administrators ("Cahaba").  Medical Team therefore submitted the cost reports for Fiscal Years Ending 1996 and 1997 to Cahaba.

19.    Cahaba took the approach that compensation to physical therapist employees paid on a per-visit basis should be reimbursed similarly to the compensation of outside contractor physical therapists, and that the guidelines authorized by statute for reimbursement of outside contractor physical therapist costs should apply to reimbursement of employee physical therapist

costs. Cahaba's approach resulted in the disallowance of approximately $41,000 in costs for Fiscal Years Ending 1996 and 1997.

*Proceedings Before the Provider Reimbursement Review Board*

20.    If a provider, including an HHA, is dissatisfied with a final determination of its Intermediary, and the amount in question exceeds $10,000, the Provider may obtain a hearing before the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo(a). As stated above, the amounts disallowed for the applicable cost reporting periods exceeded $10,000.

21.    Acting pursuant to the above-cited statutory authorization, Medical Team timely appealed to the PRRB the determination of Cahaba referenced above. The matters were consolidated (together with cases involving an unrelated dispute involving interest). The consolidated matter came on for hearing as a consolidated proceeding. The hearing was held on December 6, 2005.

22.    The PRRB issued a ruling on March 3, 2006. The PRRB panel ruled in favor of Medical Team, holding in relevant part that 42 U.S.C. § 1395x(v)(5)(A), quoted above at ¶ 8, "distinguishes services performed by employee therapists from services performed by outsised contractors 'under an arrangement' with a provider." The PRRB noted that "'under arrangement' is commonly referred to and used interchangeably with the term 'outside contractor.'" Hence guidelines applicable to outside contractors had no bearing on the reimbursement of the services of bona fide "employees paid on a fee-for service basis." Instead, in the words of the 8th Circuit in *In Home Health, Inc. v. Shalala*, 188 F.3d 1043 (1999), relied upon by the PRRB, the only constraint upon the reimbursement of the services of Medical Team's physical therapist employees was "a reasonableness requirement" established under 42 U.S.C. § 1395x(v)(1). The

9

reasonableness of employee compensation was held by the PRRB to be subject to a "prudent buyer" analysis.  Employing it, intermediaries should determine whether or not a provider's costs are substantially out of line by a comparison of the provider's costs to those incurred by other similarly situated providers.

*Action of the Administrator*

23.    Upon request by an Intermediary or of CMS staff to review the actions of the PRRB, or upon her own motion, the Administrator may determine to review actions of the PRRB.  42 U.S.C. § 1395oo(f); 42 CFR § 405.1875.  The CMS staff sought review of the PRRB ruling in this matter.

24.    The Administrator agreed to conduct a review.  On April 27, 2006 the Administrator (through a designee) issued a ruling reversing (in relevant part) the ruling of the PRRB.  The Administrator argued that he was not bound to respect the distinctions providers establish under the common law or IRS regulation between employees and non-employees, and that CMS had the right to apply the methodology Congress had prescribed for the reimbursement of costs associated with contractor physical therapists to the reimbursement of costs associated with employee physical therapists.  The Administrator expressed the view that only by so doing could the Administrator assure a supposed Congressional concern with limiting abuses.  The Administrator also noted that the applicable regulation had been amended in 1998, as noted above at ¶ 14, and claimed that this change was merely a "clarification in regulation of longstanding Medicare interpretative policy."  In so doing, the Administrator cited, as support for his claim of the supposed existence of such a policy, the language quoted in ¶¶ 11 and 12 above.

10

## Count One
### Arbitrary and Capricious Statutory Interpretation

25.    Plaintiffs hereby reallege all previous paragraphs of this Complaint, as if fully set forth herein.

26.    The Administrator's attempt to apply a statute that on its face clearly related only to reimbursement of the cost of outside contractor physical therapists as if it applied to employee physical therapists violated well-established rules of statutory construction and was arbitrary, capricious, and an abuse of discretion.

27.    The Administrator's attempt to limit the reimbursement of employee physical therapist costs pursuant to 42 U.S.C. § 1395x(v)(5)(A) at all was an attempt to exercise a power Congress had not delegated to the Administrator, was *ultra vires*, and hence was by definition an arbitrary and capricious act, and an abuse of discretion.

28.    For these reasons, the Administrator's action must be reversed, pursuant to 42 U.S.C. § 1395oo(f)(1) and 5 U.S.C. § 706(2)(A).

## Count Two
### Impermissible Modification of Regulation

29.    Plaintiffs hereby reallege all previous paragraphs of this Complaint, as if fully set forth herein.

30.    Section 1871(a)(1) of the Social Security Act, 42 U.S.C. § 1395hh, requires the Secretary to change policies according to certain definite protocols. According to § 1871(a)(2), if these protocols are not followed, the policy change is incapable of "tak[ing] effect":

> No rule, requirement, or other statement of policy (other than a
> national coverage determination) that establishes or changes a
> substantive legal standard governing the scope of benefits, the

11

> payment for services, or the eligibility of individuals, entities, or
> organizations to furnish or receive services or benefits under this
> title shall take effect unless it is promulgated by the Secretary by
> regulation under paragraph (1).

The referenced protocol for promulgating regulations and policy changes is contained in

§1871(b)(1). Subject to certain inapplicable exceptions:

> ...before issuing in final form any regulation under subsection (a),
> the Secretary shall provide for notice of the proposed regulation in
> the Federal Register and for a period of not less than 60 days for
> public comment thereon.

Although § 1871(b)(1) speaks only in terms of regulations, it is provided by § 1871(a)(2) that

§ 1871(b)(1) also applies to "statement[s] of policy ... that ... [change] a substantive legal

standard governing ... the payment for services" and "the eligibility of individuals, entities, or

organizations to furnish or receive services or benefits." Hence it is clear that such policy

changes are intended to be published and made subject to public comment in the same fashion as

regulations. Absent compliance with these protocols, such policy changes are incapable of

taking effect, just as regulations would be incapable of taking effect.

    31. Here the Administrator attempted to apply the January 1998 regulatory changes

imposing the CMS guidelines effective in April 1998, referenced in ¶ 14 above, upon

reimbursement of the cost employee physical therapists, as if the those guidelines were

applicable to cost periods before they had been promulgated. Prior to April 1998, there had been

no regulation imposing those guidelines upon reimbursement of the costs of employee physical

therapists, and the only CMS publication arguably purporting to impose those guidelines upon

the reimbursement of the costs of *any* employee physical therapists came in the PRM language

referenced above at ¶ 11 and 12. And even that language, properly interpreted, only purported to

reach the reimbursement of the costs of employee physical therapists who had previously been outside contractors and whose assumption of employee status was a bad faith attempt to evade cost limits. There had been no finding in this case, even by the Administrator, that the employee physical therapists in this case had taken on that status as part of any scheme of evasion. Hence the PRM language should not have been applicable in this instance. And in any event, the PRM has not been promulgated in compliance with the notice-and-comment regimen required to give any legal status to articulations of reimbursement policy. Hence the PRM did not have the force of law, and even if, properly interpreted, it did bear the meaning the Administrator now purported to give it, the PRM could not defeat Medical Team's entitlement to reimbursement. There was no regulation until the January 30, 1998 change effective April 1, 1998, after the cost reporting periods in question in this case. It follows that the Administrator's attempted imposition of his cost guidelines upon the reimbursement of the costs of employee physical therapists here was an attempt to apply a regulation retrospectively.

32.    However, any change to the regulations cannot be retrospective without a specific indication of Congressional intent that regulations have retrospective effect. *Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988). There is no indication anywhere of Congressional intent to allow the above-referenced changes retrospectively.

33.    For these reasons, the January 30, 1998 Federal Register notice was ineffective to amend the PRM provisions and CMS regulations regarding reimbursement of the costs employee physical therapists. Therefore, the Administrator's January 20, 2006 ruling, to the extent it was based on this implicit reading of the Federal Register notice, was based on an invalid regulation,

and not in accordance with law.  Accordingly, the Administrator's action must be reversed, pursuant to 42 U.S.C. § 1395oo(f)(1) and 5 U.S.C. § 706(2)(A) and (D).

WHEREFORE, as to both Counts, Medical Team seeks the following relief:

A.   A declaratory judgment that: a) Reimbursement of the costs to Medical Team of employee physical therapists compensated on a per-visit basis in the cost periods relevant to this case was not governed by 42 U.S.C. § 1395x(v)(5)(A); b) The efforts of the Administrator to render such reimbursement subject to the principles announced in 42 U.S.C. § 1395x(v)(5)(A) were *ultra vires* and arbitrary and capricious acts constituting an abuse of discretion; c) The effort of the Administrator to limit reimbursement for cost periods culminating on January 31, 1998 at rates far below rates the Administrator promulgated as effective April 1, 1998 was arbitrary and capricious, and an abuse of discretion; and d) The Decision of the Provider Reimbursement Review Board dated April 1, 2006, as it relates to Issue 1 articulated therein, concerning the reimbursement of employee physical therapy costs, was reasonable and correct as a matter of law, and the reversal of the same by the Administrator was arbitrary, capricious and an abuse of discretion.

B.   Reversal by this Court of the rulings of the Administrator dated April 27, 2006 as to the reimbursement claims of Plaintiff Medical Team, Inc. for Fiscal Years Ending March 31,1996, and March 31, 1997;

C.   Remand by this Court of the administrative proceedings herein, (PRRB No. 2006-D18) to the Administrator, i) with instructions to affirm the ruling of the Provider Reimbursement Review Board therein, and ii) with orders to the Administrator to

14

these proceedings, and to pay Medical Team all sums due to it to cause the total

reimbursement received to be equal to the amount owed them, including interest

and attorney's fees; and

D.      Such other and further relief as justice may require.


                                        Respectfully submitted,



John W. Jansak                          Jack L. B. Gohn, Bar No. MD02823
Harriman, Jansak & Wylie, P.A.          Gohn, Hankey & Stichel, LLP
Suite 803                               Suite 2101
401 Washington Avenue                   201 N. Charles Street
Towson, Maryland 21204                  Baltimore, Maryland 21201
(410) 296-8166 (Telephone)              410-752-9300 (Telephone)
(410) 296-6623 (Facsimile)              410-752-2519 (Telecopier)
                                        Attorneys for Plaintiff Medical Team, Inc.


0005634a.wpd